**Betty REEVES, Plaintiff,**

v.

**Morris THIGPEN, et al., Defendants.**

**Civ. A. No. 93–A–1450–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 16, 1995.

David George Flack, Montgomery, AL, for plaintiff Betty Reeves.

Ellen Ruth Leonard, Andrew W. Redd, Alice Ann Byrne, Alabama Dept. of Corrections, Legal Div., Montgomery, AL, for defendants Morris Thigpen, individually, Tommy Herring, in his capacity as Com'r of Dept. of Corrections, Jim Morrison, individually and as warden of Staton Correctional Facility, Randall Lucas, individually and as former deputy warden of Staton Correctional Facility.

R. Frank Ussery, State Personnel Dept., Montgomery, AL, Laveeda Morgan Battle, Gorham, Stewart, Kendrick, Bryant & Battle, P.C., Birmingham, AL, for defendants Joe H. Williamson, individually and in his capacity as Chairman of the State Personnel Bd., W. John Hathaway, individually and in his capacity as Vice–Chairman of the State Personnel Bd., Joe Dickson, Ruth Harrel, Harry McMillian, individually and in their capacity as members of the State Personnel Bd., Halycon V. Ballard, in her capacity as Secretary to the Personnel Bd. and as Director of State Personnel Dept.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is now before the court on the Motion for Summary Judgment filed by Defendants, Morris Thigpen ("Thigpen"), Jim Morrison ("Morrison"), Randall Lucas ("Lucas") and Tommy Herring ("Herring") (collectively "DOC Defendants"), on February 2,

1995.[1] The court will also rule on the following motions: Motion to Allowed [sic] Filing of Corrected Response to Correction Defendants' Motion for Summary Judgment filed by Plaintiff on February 21, 1995; Motion to Strike Portions of Affidavit filed by the DOC Defendants on February 23, 1995; Motion for to [sic] Allow Filing of Affidavit of Plaintiff filed by Plaintiff on March 7, 1995; and Motion to Supplement Documents Submitted in Opposition to Correction Defendants' Motion for Summary Judgment filed by Plaintiff on March 9, 1995.

Plaintiff, Betty Reeves ("Reeves"), filed this action on December 6, 1993, against the DOC Defendants and others.[2] At the present time, the only remaining defendants in this suit are Thigpen, Herring, Morrison, and Lucas. Thigpen was Commissioner of the Department of Corrections from January 1987 through March of 1993, and Herring is the current Commissioner of the Department of Corrections. Morrison is the Warden of Staton Correctional Facility ("Staton"), and Lucas is the Deputy Warden of Staton. Herring is sued in his official capacity only. Morrison is sued both in his official and his individual capacities. The complaint names Lucas and Thigpen in their individual capacities only.

Reeves alleges that the DOC Defendants violated her federally protected rights to substantive due process, procedural due process, and equal protection. Specifically, she challenges actions taken by the DOC Defendants which resulted in her termination from her position as an employee of the Department of Corrections. Reeves brings claims for the alleged deprivation of the aforementioned rights under 42 U.S.C. §§ 1983 and 1985(3).

She has properly invoked this court's jurisdiction. *See* 28 U.S.C. §§ 1331 & 1343. Reeves seeks a declaratory judgment[3], equitable relief, reinstatement, backpay, compensatory and punitive damages, costs, and attorney's fees.

For the reasons stated below, the court finds that DOC Defendants' Motion to Strike Portions of Affidavit is due to be GRANTED in part and DENIED in part and that DOC Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. The court also finds that Reeves' motion seeking permission to file a corrected brief and her motion seeking permission to file a supplemental affidavit one day late are due to be GRANTED. Reeves' Motion to Supplement Documents Submitted in Opposition to Corrections Defendants' Motion for Summary Judgment is due to be DENIED.

## II. FACTS

The court has carefully considered all affidavits and documents submitted in support of and in opposition to the Motion for Summary Judgment. The submissions, viewed in the light most favorable to the plaintiff, establish the following facts:

In January 1990, Reeves, an African-American female, was hired as a Corrections Officer I by the Alabama Department of Corrections ("the Department"). Her performance evaluations from January 1990 to February 1991 indicate that her performance exceeded standards for DOC employees. (Pltf.Attach. II). Reeves admits that she received an oral reprimand for not following instructions in August of 1991. (Reeves' Aff. at 2).

---

**1.** After missing the original dispositive motion deadline set by this court, the DOC Defendants sought special permission to file the instant Motion for Summary Judgment on the basis of qualified immunity and Eleventh Amendment immunity. Other possible grounds for summary judgment are not before the court at this time, and the court will limit its analysis of the appropriateness of summary judgment to the aforementioned immunity issues.

**2.** Plaintiff, Betty Reeves, filed suit initially against Joe H. Williamson, W. John Hathaway, Joe Dickson, Ruth Harrell, Harry McMillan, Halycon V. Ballard, Morris Thigpen, Paul Herring,

Jim Morrison, and Randall Lucas. The court dismissed Williamson, Hathaway, Dickson, Harrell, McMillan, and Ballard from the case by its order of July 25, 1994 granting their Motion for Summary Judgment.

**3.** Reeves asks this court to declare that Administrative Regulation 208 is unconstitutional because it fails to comport with the requirements of the due process clause. This determination is a matter of law rather than an issue of fact, and the court will resolve it in this opinion rather than waiting until after trial.

In November of 1991, Reeves was working at Staton. At this time Morrison was the Warden of Staton and Lucas was the Assistant Warden. Her shift commenced at 10:00 p.m. and terminated at 6:00 a.m. Lieutenant Williams supervised this shift. Reeves' scheduled days off were Monday and Tuesday.

On November 5, 1991, a Tuesday, Reeves was shopping in Sears. Sears employees detained Reeves because they believed she had taken two dresses from the store without paying for them. The Montgomery Police arrested Reeves and charged her with theft of property. Reeves concedes that at the time of her arrest she was aware that the DOC regulations require that any officer who is arrested or convicted of a felony or misdemeanor is required to submit a written report of that incident to the Commissioner of Corrections. Prior to November 8, 1991, Reeves did not inform anyone at the Department of her arrest.

In a memorandum dated November 8, 1991, Morrison informed Reeves that her failure to report her arrest at Sears for shoplifting constituted a violation of the standards of conduct for DOC employees. (Def.Ex. 3). This memorandum also noted that Reeves' records indicated that she had been subjected to two previous disciplinary actions: an oral reprimand for violation of a security procedure and a counseling session after she had been late to work. *Id.* The memorandum informed Reeves that Morrison had scheduled a pre-dismissal conference in his office on Friday, November 15, 1991 at 9:00 a.m. *Id.* The memorandum characterized this conferences as a chance for Reeves to tell her side of the story and to present information regarding her possible termination. *Id.* The memorandum which Morrison sent to Reeves clearly states that although the conference would be informal, Reeves could present written statements of witnesses or "any other information with regard to these charges." *Id.* The memorandum advised Reeves that she was entitled to have legal counsel represent her at the pre-termination conference. *Id.*

In her affidavit, Reeves acknowledges that on November 8, 1991 she received the afore-mentioned memorandum. (Reeves' Aff. at 3.) Reeves indicates that on November 15, 1991 she and an attorney, Gatewood Walden, came to the conference described in the November 8, 1991 memorandum. *Id.* Morrison and Lucas were present at this conference. *Id.* Reeves states that Morrison attempted to question her about the alleged theft at Sears and that there was no mention of the failure to report the arrest. *Id.* Upon advice of counsel, Reeves refused to respond to questions about the theft. *Id.* at 4.

By letter dated December 6, 1991, Thigpen informed Reeves that the Department was terminating her for violating Administrative Rule 207. (Def.Ex. 5). This letter instructed Reeves that she could appeal the dismissal if she felt it was unwarranted. *Id.*

Reeves appealed her termination to the Alabama State Personnel Board ("the Board"). A hearing was held on April 30, 1992, before Daniel T. Hull, Jr. ("Hull"), a hearing officer designated by the Board. (Def.Ex. 1). At the hearing, Reeves was represented by an attorney and was given an opportunity to present her case. *Id.* On May 8, 1992, Hull submitted a report which recommended that the termination be sustained. (Def.Ex. 6). On August 11, 1992, the Board adopted Hull's findings of fact and conclusions of law and entered a written order upholding the Department's termination of Reeves. (Def.Ex. 7). After the Board affirmed Reeves' dismissal, she filed this action.

## III. PRELIMINARY MOTIONS

### A. Motion to Allowed [sic] Filing of Corrected Response

On February 21, 1995, Reeves filed a motion asking this court to allow her to file a corrected response to the DOC Defendants' Motion for Summary Judgment. Reeves urged this court to accept the corrected brief because the original response to the DOC Defendants' Motion for Summary Judgment, while timely filed, "contained numerous grammatical errors and was not clear on a number of issues." To the extent that the corrected brief is filed to correct such errors

and to make the brief more comprehensible, the court finds that Reeves' motion is due to be GRANTED. Therefore, the court will rely on the corrected brief rather than the original brief in evaluating Reeves' arguments in opposition to the DOC Defendants' Motion for Summary Judgment.

## B. Motion to Supplement Documents Submitted

■ On March 9, 1995, Reeves filed a Motion to Supplement Documents Submitted in Opposition to Corrections Defendants' Motion for Summary Judgment. Without offering any reason for her previous failure to timely file the evidentiary exhibits with the other items she submitted in opposition to the DOC Defendants' Motion for Summary Judgment, Reeves seeks to offer evidence of criminal records concerning John E. Carter. The court finds that Reeves' Motion to Supplement Documents Submitted in Opposition to Correction Defendants' Motion for Summary Judgment is due to be DENIED. Thus, the court notes that it need not and does not consider the items of evidence concerning criminal records of John E. Carter which Reeves seeks to submit in opposition to the DOC Defendants' Motion for Sum-

mary Judgment as they were not timely filed with her opposition to the motion.

## C. Motion to Strike Portions of Reeves' Affidavit

Before turning to the issues presented by the Motion for Summary Judgment, the court will address the appropriateness of various portions of Reeves' original affidavit. Reeves' original affidavit includes statements which do not appear to conform to the requirements of Fed.R.Civ.P. 56(e). The DOC Defendant objected to Reeves' affidavit in a Motion to Strike Portions of Affidavit filed on February 23, 1995.[4] On February 27, 1995, this court ordered Reeves to file a supplemental affidavit which would set forth the source of her knowledge of the facts recited in her affidavit concerning Alton Kelly, Lee Bush, and John Carter. The court also directed Reeves to make clear what admissible evidence of the facts concerning these individuals existed. Finally, this court indicated that Reeves could file a response to the Motion to Strike.

On March 6, 1995, Reeves filed a response to the Motion to Strike. In this response, Reeves argues that she need not submit evidence in opposition to a motion for summary judgment in a form which would be admissi-

---

4. In their Motion to Strike Portions of Affidavit, the DOC Defendants object to several statements Reeves made in her affidavit. For the sake of clarity, the court will herein recite the exact language in Reeves' affidavit to which the DOC Defendants object.

Statement One: "I know that another officer, Alton Kelly, was arrested and did not notify the Commission Thigpen [sic] of the arrest and that the correction officials knew of the arrest. I understand no punishment was given him. I also understand that Lee Bush, a white correction officer at Staton was arrested and did not report it and nothing was done to him. John Carter, a white correction officer at Staton was arrested and did not report it. The Correction officials knew of his arrest and nothing was done to him." (Reeves Aff. p. 4).

Statement Two: "Based on my observations at Staton, if a white officer who may be in violation of a regulation for failure to do a particular procedure he would have been given some kind of notice by the supervisor including Lucas and/or Morrison so the white officer could rectify the situation. However, if a black officer is in a similar situation, he is not given any notice in order to rectify the situation." (Reeves Aff. p. 4).

Statement Three: "I also understand that my termination from employment under the revised dismissal procedure under Administrative Regulation 208 started on August 21, 1991 was one of the first at Staton and that for the three year period following the revision of Administrative Regulation 208, a disproportionate number of black officer have [sic] been terminated and I intent [sic] to present such evidence at trial through witnesses on my witness list. Based on information and belief, there were numerous white officers who violated the provisions of failure to obey regulations and thus failure to uphold, with integrity, the public trust involved in their positions and either received no punishment or mild punishment." (Reeves Aff. p. 5).

Statement Four: "I cannot believe that Defendants Thigpen, Morrison and Lucas as well as the various corrections officials who reviewed the reasons for the dismissal believed that I was being terminated because of failure to report an arrest of which they already knew. The real reason is that Defendants wanted to retain white officer who had been [sic] arrested and terminate black officer who had been [sic] arrested." (Reeves Aff. p. 7).

ble at trial.[5] In response to this court's order to set forth the source of her knowledge of certain facts recited in her affidavit, Reeves filed the following items on March 6, 1995: an affidavit from Alton Kelly, an arrest warrant for Alton Kelly, an affidavit from Rodney Thornton, a roster of employees of Staton indicating the amount of leave each had, an affidavit from Avery Bowman, and a supplemental affidavit from George Eldridge.[6] On March 7, 1995, Reeves filed a motion seeking permission to file her supplemental affidavit one day late. The court finds that Reeves' Motion for to [sic] Allow Filing of Affidavit of Plaintiff is due to be GRANTED.

### 1. Rule 56(e)

Reeves' affidavit was filed in support of her opposition to the DOC Defendants' Motion for Summary Judgment, and as such, it must comport with the requirements of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 56(e) provides that all affidavits offered in support of or in opposition to motions for summary judgment

> shall be made on **personal knowledge,** shall set forth such facts as would be **admissible in evidence,** and shall show affirmatively that **the affiant is competent to testify to the matters stated therein.**

Fed.R.Civ.P. 56(e) (emphasis added).

The DOC Defendants contend that statements in Reeves' affidavit in opposition to their Motion for Summary Judgment fail to comport with the requirements of Rule 56(e)

and should be stricken. The DOC Defendants contend that Reeves made some of the statements in her affidavit without personal knowledge and that Reeves' affidavit fails to set forth facts as would be admissible in evidence because Reeves' "knowledge" of the facts is based on inadmissible hearsay.

### 2. Lack of Personal Knowledge

#### a. Statement One

It is clear from the plain language of Rule 56(e) that Reeves must have personal knowledge of all that she includes in her affidavit. Reeves admitted in her supplemental affidavit that the personal knowledge which she has regarding the facts in Statement One is not a personal knowledge of the events described in that statement. Reeves bases Statement One on "statements of other officers (Avery Bowman)[7] who will testify at trial and a copy of the arrest reports on John Carter and the affidavit of Alton Kelly." The court notes that Reeves failed to support her brief in opposition to the DOC Defendants' Motion for Summary Judgment by submitting an affidavit from Avery Bowman or Alton Kelly, nor did Reeves submit copies of the arrest reports of John Carter with her brief. Reeves admits that the basis of her knowledge of information concerning Lee Bush was Eddie Allen, a former Staton employee who recently died.[8]

The court is satisfied that Reeves had personal knowledge of the existence of statements of others which actually contained the facts she initially included in Statement One.

5. Reeves further contends that one of the affidavits on which her own original affidavit was based was previously submitted to the court in a Motion for a Protective Order. The court notes that the Motion for a Protective Order was handled entirely by Magistrate Judge Coody. In reaching its decision on the DOC Defendants' Motion for Summary Judgment, this court will only consider evidence submitted in support of or in opposition to this motion. The Alton Kelly affidavit is not such a document as it was not filed in support of or in opposition to the DOC Defendants' Motion for Summary Judgment. To the extent that Reeves raises the prior submission of the affidavit to emphasize that the DOC Defendants had notice of its existence, the court takes notice of that fact.

6. None of these items establish that Reeves had personal knowledge of the **facts** in the portion of

her original affidavit which this court refers to as Statement One. Reeves does indicate that these items are the source of her **knowledge of the existence of evidence** which allegedly supports Statement One.

7. The court finds nothing in Avery Bowman's affidavit which supports Statement One. Even if it does support Statement One, the DOC Defendants did not have adequate notice of Reeves' source so that they could respond.

8. This admission is an apparent concession that discussions in her affidavit of Lee Bush were based on inadmissible hearsay or perhaps double hearsay. The death of her source makes it highly improbable that she could present any testimony regarding Bush.

While the court is not convinced that this is the kind of personal knowledge which Rule 56(e) requires, the court is convinced that Reeves, in good faith, believed that this was an appropriate way to present this information to the court. Moreover, the information was sufficiently specific so that the DOC Defendants were able to respond to the Alton Kelly affidavit of which they already had reason to be aware. In other words, Reeves should not have put this information before the court by her own affidavit. The facts included in Statement One are not within her personal knowledge, nor is she competent to testify about such facts. Reeves should have submitted affidavits or deposition testimony from the individuals who supplied Reeves with this information. However, in this case the error seems to be harmless. Because Reeves' affidavit included the most important information, specifically the names of the alleged white officers who were treated differently and who may be able to provide competent admissible testimony concerning that treatment, the DOC Defendants had that important information. The court believes that Reeves would have submitted Alton Kelly's affidavit instead of summarizing it in her own affidavit if she had understood the requirements of Rule 56(e). Because this good faith error does not unduly prejudice the defendants in this case and because this information is crucial to the court's determination of the issues presented by the DOC Defendants' Motion for Summary Judgment, the court will accept the affidavit of Alton Kelly as evidence for Reeves in opposition to the Motion for Summary Judgment.[9] However, Statement One is due to be STRICKEN from Reeves' affidavit due to Reeves' lack of personal knowledge and capacity to testify to the facts listed in Statement One.

#### b. Statement Three

■ Statement Three is similarly inappropriate as it is not based on personal knowledge. Because affidavits proffered in opposition to a motion for summary judgment must be based upon personal knowledge, a statement merely indicating that an affidavit is based upon information and belief is insufficient as a matter of law. *See, e.g., Price v. Rochford,* 947 F.2d 829, 832–33 (7th Cir.1991); *Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 659 (7th Cir.1991); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). To the extent that Reeves fails to base her affidavit on personal knowledge, she has failed to comply with the requirements of Rule 56(e). Clearly, Reeves made Statement Three upon information and belief and not upon personal knowledge. Inclusion of Statement Three in an affidavit submitted under Rule 56(e) is improper, and Statement Three is due to be STRICKEN.

#### 3. Hearsay As a Basis for a Rule 56(e) Affidavit

■ Although the appropriateness of Statement One is disposed of by this court's ruling that it be stricken and that Alton Kelly's affidavit be admitted in its place, the court has an alternative basis for this ruling. As previously discussed a Rule 56(e) affidavit not only must be based on personal knowledge, but it must also set forth facts as would be admissible in evidence. Hearsay is not generally admissible in evidence. *See,* Fed. R.Evid.P. 802. Reeves now admits that the facts she included in her original affidavit which this court refers to as Statement One are facts she learned from out of court statements to her by others or from reading affidavits. Thus, Statement One contains inadmissible hearsay.

■ The DOC Defendants argue that because Statement One is inadmissible hearsay it is therefore inappropriately included in Reeves' Rule 56(e) affidavit. The DOC Defendants contend further that it has long been the rule in this circuit that inadmissible hearsay cannot be properly used to oppose summary judgment, especially if it is not shown that admissible evidence to the same effect will be available at trial. *See, Victoria L. by Carol A. v. District Sch. Bd.,* 741 F.2d

---

**9.** The court notes that the other items upon which Reeves relied in making her affidavit are not properly before this court for its consideration for the Motion for Summary Judgment. The court requested the items only to determine whether Reeves' affidavit was made in accordance with the dictates of Rule 56(e).

369, 373 (11th Cir.1984)[10]; *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 559 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir.1976); *Roucher v. Traders & General Ins. Co.*, 235 F.2d 423 (5th Cir. 1956).[11] The latter argument seems to be that even if hearsay is appropriately included in an affidavit submitted in opposition to a motion for summary judgment, **inadmissible** hearsay cannot be used to oppose such a motion. The court agrees.

Reeves responds to this argument by pointing out that a party opposing a motion for summary judgment need not depose her own witnesses and need not submit evidence in a form that would make it admissible at trial. Reeves relies on *Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), for this argument. The court recognizes that the United States Supreme Court has said that "[it did] not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid a summary judgment." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Reeves seems to argue that this statement means that hearsay information may be included within an affidavit submitted in opposition to a motion for summary judgment. This is not the meaning that this court ascribes to this phrase.

First, the court notes that *Celotex* did not say anything at all about relieving a party from any obligation to submit Rule 56(e) affidavits in the form set out in that rule. Rather *Celotex* addresses what a non-moving party must produce to avoid a motion for summary judgment. Cases which have addressed this specific question long after the Supreme Court decided *Celotex* have held that a court cannot properly consider inadmissible hearsay contained in Rule 56(e) affi-

davits. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir.1992).

Second, the court finds that Reeves' construction of *Celotex* fails to appreciate the language from the opinion upon which she relies **in context**. Thus, to understand what the Supreme Court meant it is helpful to examine the sentence in context within the opinion.

> We do not mean that the nonmoving party must produce evidence in a **form** that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (emphasis added). It seems then that the Supreme Court was only emphasizing that evidence submitted in opposition to a motion for summary judgment need not be submitted in an admissible form. For example, a witnesses' testimony can be summarized and submitted in an affidavit at the summary judgment stage, although at trial such an affidavit would be inadmissible and, instead, the live witness would have to be used to present the evidence. Thus, *Celotex* does not address the appropriateness of hearsay in a Rule 56(e) affidavit, nor does it wipe out established law in this circuit that the nonmoving party cannot properly and effectively use otherwise inadmissible hearsay to oppose a motion for summary judgment.

Thus, based on this rationale, the court is persuaded that Statement One is due to be STRICKEN so that Reeves' affidavit complies with the requirements of Rule 56(e).

---

**10.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

**11.** The court notes that the DOC Defendants base their Motion to Strike on *Victoria L.* and *Pan-*

*Islamic Trade Corp.*, however, the court notes that a recent panel of the Eleventh Circuit called these cases into doubt and stated that *Celotex* may have overruled them in part. *See, Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, Fla.*, 2 F.3d 1514, 1530 (11th Cir.1993).

#### 4. Conclusory Statements

This court finds it unnecessary to rely upon Statement Two or Statement Four. Therefore, to the extent that the DOC Defendants' Motion to Strike applies to such statements, it is due to be DENIED as MOOT. Statement Two expresses Reeves' belief that black officers at Staton are treated differently than similarly situated white officers. This impression about the general state of affairs at Staton is too vague to be of use to this court in considering the issues raised in the Motion for Summary Judgment. Reeves has failed to specify whether the person that she allegedly observed administering disparate treatment to white and black officers was a named defendant in this case. Statement Four encompasses Reeves' conclusions about the motivations of the DOC Defendants. Her speculation about their intent is not helpful to this court's determination of the issues before it.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See,* Fed.R.Civ.P. 56(c).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

#### B. Reeves' Claims Under 42 U.S.C. § 1983

#### 1. General Requirements for Claims under Section 1983

Reeves seeks relief pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. *See* 42 U.S.C. § 1983. In order to establish a claim under Section 1983, Reeves must prove that the defendants acted under the cloak of state authority when they took the alleged actions against Reeves and that the actions deprived Reeves of a right or rights secured by the Constitution or by federal law. Thus, Section 1983 is not a source of rights, rather it is a means of vindicating

federal rights. *Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). When a court begins to analyze a Section 1983 claim, it must first "identify the specific constitutional right allegedly infringed." *Id.* Whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. *See, Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). Reeves identifies three federally protected rights which she contends have been infringed by the conduct of the DOC Defendants: substantive due process, procedural due process, and equal protection.

### 2. Claims against DOC Defendants in their Individual Capacities

Reeves brings suit under 42 U.S.C. § 1983 against Morrison, Lucas, and Thigpen in their individual capacities. Each of these defendants has claimed that qualified immunity protects them from Reeves' claims and that they are entitled to summary judgment.

#### a. Qualified Immunity

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982). Qualified immunity is a question of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich*, 925 F.2d 1339 (11th Cir.1991). As the Eleventh Circuit recently explained,

> [t]hat qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their **individual capacities.** Unless a government agent's act is so obviously wrong, in the light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but the exceptional cases, courts should think long and hard before stripping defendants of immunity.

*Lassiter v. Alabama A & M Univ. Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citations omitted).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow*, 457 U.S. at 815–19, 102 S.Ct. at 2736–39. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818, 102 S.Ct. at 2738.

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing a discretionary function within his authority when the alleged violation occurred. *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his duties and were taken in accordance with those duties. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dept. of Human Services*, 977 F.2d 934, 939 (5th Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundary of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton*, 919 F.2d at 1537. The plaintiff must meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub-parts. First, the court must find that the constitutional law in question was

clearly established when the alleged violation occurred. *Id.* at 1538. Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "the contours of the [violated] right must be sufficiently clear that a reasonable official would know that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions defendant took." *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985)). In determining whether the plaintiff meets this burden, the court is guided by the Eleventh Circuit's direction in *Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145 (11th Cir.1990):

> In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry. Under this inquiry, the plaintiff need not point to one or more cases that resolved the precise factual issues at issue in his or her case. [A]lthough the standard is fact-specific, it is not one of factual rigidity. Rather, the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same

circumstances and possessing the same knowledge as the defendant.

*Id.* at 147 (citations omitted). The Eleventh Circuit has said that the "most common error" it encounters as a reviewing court occurs when courts "permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'" *Lassiter,* 28 F.3d at 1150 (citations omitted). Clearly, it is the law of this circuit that

> [f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*

*Id.*

If the plaintiff satisfies her initial burden and shows that the rights that defendants' conduct allegedly violated were clearly established at the time of defendants' conduct, the court must then determine whether the plaintiff has adduced evidence sufficient to create a genuine issue of fact as to whether defendants actually engaged in conduct that violated clearly established law. *Rich,* 841 F.2d at 1564. *See also Stewart v. Baldwin County Bd. of Education,* 908 F.2d 1499, 1503 (11th Cir.1990). In this undertaking, the court must draw all inferences of fact in favor of the plaintiff when the plaintiff is the party opposing the motion. *Stewart,* 908 F.2d at 1503.

Morrison, Lucas and Thigpen have claimed the protection of qualified immunity. Reeves has named each of these defendants in their individual capacities. The court notes that it is undisputed that Morrison, Lucas and Thigpen were acting within the scope of their discretionary authority when they took actions which allegedly caused Reeves to suffer a deprivation of federally protected rights. The undisputed facts of this case support a finding that Morrison, Lucas and Thigpen took actions which were in accordance with and part of their normal job duties. *See, Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988). Thus, the court finds that they were acting within the scope of their discretionary authority. With this

part of the qualified immunity analysis behind it, the court turns to the issue of whether the plaintiff has met her burden by adducing cases which demonstrate that the alleged actions of the defendants violated clearly established constitutional law and facts which create a genuine issue of fact as to whether defendants engaged in conduct that violated clearly established law.

### i. Due Process: Substantive and Procedural

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. The Due Process clause provides two different kinds of constitutional protection: procedural due process and substantive due process. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994) (en banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). A violation of either of these kinds of protection may form the basis for a suit under Section 1983. *Id.*

### Substantive Due Process

The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). The Supreme Court has deemed that most—but not all—of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights also merit protection. *See Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992). It is in this framework that fundamental rights are incorporated in the Fourteenth Amendment prohibitions against the states. A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986)).

Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas. In fact,

the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins,* 503 U.S. at ——, 112 S.Ct. at 1068 (citation omitted). Areas in which substantive rights are created only by state law (as is the case with tort law and public employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed.

Until recently, the law of this circuit was that a public employee had a valid cause of action for pretextual termination under the substantive component of the due process clause. *See, e.g., Adams v. Sewell,* 946 F.2d 757, 766 (11th Cir.1991). A recent en banc decision from the Eleventh Circuit held that such a cause of action was invalid. *McKinney,* 20 F.3d at 1560. In *McKinney,* the Eleventh Circuit addressed whether a government employee possessing a state created property interest in his employment states a substantive due process claim under the Fourteenth Amendment, rather than a procedural due process claim, when he alleges that he was deprived of employment in an arbitrary and capricious government action. *McKinney,* 20 F.3d at 1553. By this holding, the Eleventh Circuit reversed ten years of circuit precedent by holding that "in non-legislative cases, only procedural due process

claims are available to pretextually terminated employees." *Id.* at 1560.[12]

The Eleventh Circuit explained that employment rights are state-created rights. As such, they are not fundamental rights created by the Constitution and protected by the substantive component of due process. *Id.* The *McKinney* court explained that "[a]s a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive— due process are observed." *Id.* As a result of this analysis, the *McKinney* court decided that the plaintiff was only entitled to a procedural due process claim and that the plaintiff had received procedure adequate to satisfy the requirements of the Constitution. *Id.* at 1564–65.

■ Reeves alleges that the actions of the defendants give her a Fourteenth Amendment substantive due process claim under Section 1983. This is exactly the kind of claim which *McKinney* forbids. Thus, Reeves may challenge the deprivation of her employment only to the extent that she is **not** attempting to use 42 U.S.C. § 1983 to recover for the deprivation of a state created right by arguing it caused a deprivation of substantive due process. To the extent that Morrison, Lucas and Thigpen seek summary judgment on Reeves' claims that she was denied substantive due process, their motion is due to be GRANTED.

### Procedural Due Process

■ The Supreme Court has held that where a State creates a property right in continued employment, it may not constitutionally authorize the deprivation of such an interest without "appropriate procedural safeguards." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Thus, a court analyzing a claimed violation of the requirements of procedural due process in this context must ascertain: whether the state created a property right or interest in continued employment and whether the defendant deprived that right or interest by a process that did not include appropriate procedural safeguards.

■ Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In this case, the DOC Defendants have not challenged Reeves' implicit claim that she was a permanent employee of the Alabama Department of Corrections. As such, Reeves could be terminated only "for cause," that is, on the basis of certain enumerated reasons. *See* Ala.Code. § 36–26–27(a).[13] Thus, the court assumes that Reeves' status as a non-probationary employee "supports the conclusion ... that [she] possessed property rights in continued employment." *Loudermill,* 470 U.S. at 539, 105 S.Ct. at 1491.

■ The court now turns to an examination of what process Reeves was properly due both before and after the termination of her employment with the Department. The resolution of this question is necessarily a

---

12. "Non-legislative" or "executive" acts apply to a limited number of persons and very often to only one person. They typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations. *Id.* at 1557 n. 9 (citations omitted).

"Legislative" acts, on the other hand, generally apply to a larger segment of—if not all of— society; laws and broad-ranging executive regulations are the most common examples. *Id.*

Reeves' termination is clearly a non-legislative decision. As such, it comes within the sphere of the *McKinney* holding.

13. Ala.Code § 36–26–27(a), provides in relevant part:

An appointing authority may dismiss a classified employee whenever he considers the good cause of the service will be served thereby, for reasons which shall be stated in writing, served on the affected employee and a copy furnished to the director, which action shall become a public record. The dismissed employee may, within 10 days after notice, appeal from the action of the appointing authority by filing with the board and the appointing authority a written answer to the charges. The board shall, ..., order a public hearing and *if the charges are proved unwarranted,* order the reinstatement of the employee under such conditions as the board may determine.... (emphasis added).

matter of federal law. *Id.* at 532, 105 S.Ct. at 1487–88. The Supreme Court has made clear that, although the preliminary question of whether a property right exists may be one of state law, federal law governs the analysis of whether the procedures by which the property right or interest was deprived comport with the requirements of procedural due process. *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492–93.

> The right to due process is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.

*Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493 (internal quotations and citations omitted). Thus, the question in this case is not whether Reeves' termination was in compliance with the policies and procedures of the Department, but rather it is whether the procedures by which Reeves was terminated satisfy the constitutional due process requirements as set out by the Supreme Court and the Eleventh Circuit.[14]

### Pre–Termination Process

 In *Loudermill*, the Supreme Court made it clear that some form of pre-termination hearing is required before a public employee can be discharged, and consequently, deprived of his or her property interest in continued employment. *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495. This pre-termination hearing need not be elaborate, and something less than a full evidentiary hearing suffices especially where post-termination review is available. *Id.*

> [T]he pre-termination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Id.* at 545–46, 105 S.Ct. at 1495. Because the "essential requirements of due process" are "notice and an opportunity to respond," the tenured public employee is entitled only to "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Id.* at 546. The Supreme Court definitely determined that to require more than this prior to termination would "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* Following the clear dictates of the *Loudermill* decision, the Eleventh Circuit has held that "it is clear that oral notice and an opportunity to respond orally is sufficient in the pretermination context." *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir.1985) (overruled in part on other grounds). *Accord, Narey v. Dean*, 32 F.3d 1521, 1527 (11th Cir.1994). In light of the foregoing authority, it seems clearly established that all that the DOC Defendants were required to provide Reeves prior to her termination in order to afford her due process was notice and an opportunity to respond.

In light of the clearly established requirements in this circuit that pre-termination procedural due process requires notice and opportunity to respond, the court now must determine whether there is a genuine issue of fact regarding whether the DOC Defendants engaged in conduct violative of the clearly established law. In other words, the court must decide whether there is a genuine issue of fact regarding whether the DOC Defendants failed to provide Reeves with a notice and an opportunity to respond prior to her termination.

In a memorandum dated November 8, 1991 (the "Memorandum"), Morrison informed Reeves that **her failure to report** the fact that she had been arrested at Sears for shoplifting constituted a violation of the standards of conduct for DOC employees. (Def.Ex. 3). This Memorandum, when read in the light most favorable to Reeves, the

---

**14.** The court notes that given the DOC defendants' assertion of the defense of qualified immunity, the constitutional due process requirements need to have been so clearly established by pre-existing case law that reasonable state actors would have been able to recognize the contours of the requirements. *See, Lassiter*, 28 F.3d at 1149–50.

non-moving party, may also support Reeves' contention that the defendants were considering dismissing her for criminal activity and failure to report her arrest rather than failure to report the arrest alone. The Memorandum also noted that Reeves' records indicated that she had been subjected to two previous disciplinary actions: an oral reprimand for violation of a security procedure and a counseling session after she had been late to work. *Id.* The Memorandum informed Reeves that Morrison had scheduled a pre-dismissal conference in his office on Friday, November 15, 1991 at 9:00 a.m. *Id.* The Memorandum characterized this conferences as a chance for Reeves to tell her side of the story and to present information regarding her possible termination. *Id.* The Memorandum which Morrison sent to Reeves clearly states that although the conference would be informal, Reeves could present written statements of witnesses or "any other information with regard to these charges." *Id.* The Memorandum advised Reeves that she was entitled to have legal counsel represent her at the pre-termination conference. *Id.*

In her affidavit, Reeves acknowledges that on November 8, 1991, she received the Memorandum. (Reeves' Aff. at 3). Reeves indicates that on November 15, 1991 she and an attorney, Gatewood Walden, came to the conference described in the Memorandum. *Id.* Morrison and Lucas were present at this conference. *Id.* Reeves states that Morrison attempted to question her about the alleged theft at Sears and that there was no mention of the failure to report the arrest. *Id.* Upon advice of counsel, Reeves refused to respond to questions about the theft. *Id.* at 4.

Reeves seems to argue that despite the fact that she was provided with notice which specified the nature of the specific charge against her, and despite the fact that she had a pre-termination opportunity to meet with Morrison and Lucas to discuss this alleged violation of the rules, she was denied pre-termination procedural due process. The court does not agree with Reeves' conclusion.

Reeves does not dispute that she had received the Memorandum which clearly states the specific nature of the charge against her and the fact that she was entitled to bring an attorney and any information relevant to the specific charge to the pre-termination meeting. Reeves offers no evidence that any of the defendants prevented her from discussing her failure to report at this pre-termination conference. Neither Reeves' unwillingness to discuss the arrest at the pre-termination conference nor the alleged failure of Lucas and Morrison to ask questions regarding Reeves' failure to report the arrest after she had refused to answer questions about the arrest itself compel this court to find that the defendants' actions deprived Reeves of notice and an opportunity to tell her side of the story. In fact, the undisputed facts before this court indicate that Reeves received both notice of the specific charge against her and an opportunity to respond to this charge; therefore, the court concludes that Morrison, Lucas, and Thigpen [15] are entitled to summary judgment on Reeves' claims against them in their individual capacities for alleged deprivation of procedural due process in the pre-termination context.

### Post–Termination Process

A complete consideration of whether a public employee's termination was carried out in accordance with the requirements of procedural due process, requires this court to next consider the adequacy of the post-termination process afforded the employee.

A panel of the Eleventh Circuit has held that an informal meeting with a former supervisor post-termination is insufficient to satisfy the demands of procedural due process. *Kelly,* 764 F.2d at 1416.[16] In so hold-

---

**15.** The court notes that Reeves makes no claims against Herring in his individual capacity.

**16.** In *Kelly,* a city fire-fighter was given oral notice that he was going to be terminated. *Kelly,* 764 F.2d at 1413. Upon receipt of this notice, he went to talk to the city manager. *Id.* The city manager indicated that he would discuss the matter with the fire-fighter's immediate supervisor. *Id.* The fire-fighter then received written notice that he was being terminated from the fire department for insubordination. *Id.* Upon receipt of this notice, the fire-fighter again went to speak to the city manager who then informed the fire-fighter that he was going to uphold the termination. *Id.* After finding that the pre-termi-

ing, the court emphasized that "the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons for allowing the abbreviated pre-termination procedures." *Id.* at 1415. The court also emphasized that due process requires a more "formalistic confrontation of facts and positions." *Id.* The court specified that the informal meeting in that case failed to allow the employee to bring witnesses. *Id.* It also failed to provide the employee with an opportunity to confront and cross-examine his accuser in the presence of the decision maker. *Id.* Such informal post-termination proceedings fail to put the employee on notice that the meeting was his one and only opportunity to present his side of the case. *Id.* Additionally, the court noted that the informality of the post-termination meeting failed to allow the decision maker to fully appreciate his duty to decide the issue in a fair and impartial manner. *Id.* at 1416.

The court notes that *Kelly* suggests an additional reason why the informal post-termination meeting in that case failed to comport with the requirements of procedural due process, namely that an employee "may wish to introduce evidence of the employer's past history which shows that similarly situated individuals received something less than discharge." *Id.* at 1415.[17] Thus, the court seems to base its determination that the post-termination process failed to provide adequate procedural due process on a finding that the informal post-termination meeting failed to be as comprehensive in scope as it should have been. Reeves argues that *Kelly* stands for the proposition that any post-termination proceeding which does not allow an examination not only of whether the

charges supporting the dismissal are true, but also whether the dismissal was an appropriate form of discipline and whether there were any mitigating circumstances. Reeves contends that under Alabama law and State Personnel Board Rules, a terminated employee receives a hearing before a hearing officer on only one issue: whether the charges stated are warranted or unwarranted. The court notes that Reeves' argument is based not on the clear holding of *Kelly*, but rather on extension of the *Kelly* court's reasoning. Such dicta does not dictate the conclusion for every like-situated, reasonable government agent that the failure to allow the scope of a post-termination hearing to encompass issues of whether termination was appropriate, whether mitigating factors existed, and whether others were treated differently as well as the issue of whether the charges supporting dismissal are true, violates federal law in the circumstances. *See, Lassiter,* 28 F.3d at 1149–50. Thus, the facts of this case do not support a finding by this court that Morrison, Lucas and Thigpen have surrendered the protection of qualified immunity.

Reeves fails to offer any other cases which clearly establish that the type of formal post-termination hearing in which Reeves participated is not sufficient to satisfy the requirements of procedural due process in the post-termination context. To the extent that she argues that the actions defendants allegedly took to narrow the scope of the post-termination hearing violated the requirements of due process, Reeves has failed to meet her burden of showing that the legal norms allegedly violated by Morrison, Lucas and Thigpen were clearly established at the time of

---

nation process afforded the fire-fighter was adequate, the Eleventh Circuit addressed the adequacy of the post-termination process.

**17.** The court notes that *Kelly* cites *Loudermill* as authority for this proposition. However, the *Kelly* court cited a portion of the *Loudermill* decision which emphasized that a **pre-termination** hearing needed to include an opportunity for the employee to tell his or her side of the story. *Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1493–94.

The need for some form of pretermination hearing ... is evident from a balancing of the competing interests at stake.... Second,

some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even when the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be **before the termination takes effect.**

*Loudermill,* 470 U.S. at 542–43, 105 S.Ct. at 1493–94. (citations omitted; emphasis added). Clearly, the *Loudermill* decision focused on a pre-termination opportunity for an employee to tell his or her side of the story, rather than a post-termination opportunity to do so.

the challenged actions or that the law clearly proscribed the actions that these defendants allegedly took. This court cannot conclude that pre-existing law in this circuit dictates such a conclusion.

■ This is not to say that the state of the case law at the time of the events leading to this case was such that the contours of a state employee's right to post-termination due process were not at all clearly established. The bright-line rule which emerges from the *Kelly* case is that an informal post-termination meeting is not sufficient to satisfy the requirements of procedural due process in the post-termination context. It is clearly established in this circuit that a formal, post-termination, due process hearing should provide the terminated employee with the following: a hearing before an impartial decision-maker, an opportunity to confront and cross-examine the accuser in the presence of the decision-maker, an opportunity to present evidence, and the presence of counsel. *See, Adams,* 946 F.2d at 765; *Kelly,* 764 F.2d at 1415. The court will now decide whether Reeves has adduced any evidence that the defendants engaged in behavior which denied Reeves such a formal, post-termination, due process hearing.

It is undisputed that Reeves was given a formal post-termination hearing on April 30, 1992 before Daniel Hull, a State Personnel Department Hearing Officer. At this hearing, Larry Raby, an attorney, represented Reeves. (Def.Ex. 6; Reeves' Aff. at p. 5). Reeves testified in her own defense and, through her attorney, she cross-examined the witnesses presented by the Department. She had the option to present witnesses and exhibits in her defense. Reeves does not dispute that this evidentiary hearing took place before an impartial decisionmaker. Thus, the post-termination process that

Reeves received complies with the clearly established requirements of due process as they have been explained by the Eleventh Circuit.

In light of the foregoing, the court concludes that Morrison, Lucas, and Thigpen are entitled to the protection of qualified immunity and to summary judgment on Reeves' claims against them in their individual capacities for alleged violations of Reeves' right to procedural due process.

### ii. Equal Protection Claim

In her Equal Protection Clause claim, Reeves contends that the DOC Defendants engaged in race discrimination. Specifically, she alleges that some white state employees who engaged in the same or more grievous offenses were not terminated.

■ The equal protection clause of the Fourteenth Amendment affords Reeves a right to be free from racial discrimination. *See, e.g., Washington v. Davis,* 426 U.S. 229, 239–241, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976).[18] It can hardly be argued that intentional race discrimination in the workplace is not a clearly established violation of federally protected rights. *See, Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1064 (11th Cir.1992).

In the Eleventh Circuit,

Section 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of the prima facie case is the same in either case: 'A *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination ... Rather it is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.' *Lee v. Conecuh County Bd. of Educ.,* 634 F.2d 959, 962 (5th Cir.1981) (quoting *Furnco*

---

**18.** The court notes that the equal protection clause gives employees a right to be free from disparate treatment by state employers. However, the right to bring disparate impact cases under the equal protection clause is severely limited. *See, Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597.

*Constr. Corp. v. Waters,* 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–52, 57 L.Ed.2d 957 (1978)). Moreover, the formulation of the parties' burdens developed for Title VII cases applies to Section 1983 racial discrimination claims. *Id.* at 963.

First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). In a failure to hire case, this may be done by showing that (i) he is a member of a protected class; (ii) he applied for and was qualified for the position; (iii) despite his qualifications, he was rejected for the position; and (iv) a person not a member of the protected class with equal or lesser qualifications received the position or the position remained open. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Courts dealing with cases alleging discriminatory demotion or discharge modify the prima facie case so that it applies to those types of employment actions as well as to failure to hire. *Lee,* 684 F.2d at 773. The modified prima facie case requires a showing that plaintiff, a member of a protected class, was demoted or discharged from a position for which he was qualified and that others outside the class were not so treated or that the plaintiff was replaced by someone not in the protected class. *Id. Accord, Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991). Proof of the prima facie case creates a presumption, or a required conclusion in the absence of explanation, "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

Once the plaintiff proves his prima facie case, the burden then shifts to the employer to state a legitimate, non-discriminatory reason for not hiring him. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. This is a burden of production, not

persuasion. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. The defendant must produce admissible evidence which, if believed by the trier of fact, would support a conclusion that the employment action was not the product of unlawful discrimination. *St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2747. This burden, like the plaintiff's prima facie case, is easily met. *Howard v. B.P. Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994). Once a defendant meets his burden of producing a legitimate non-discriminatory reason for the employment decision, the presumption raised by the prima facie case is rebutted and drops from the case. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993). If the employer articulates legitimate nondiscriminatory reasons for not hiring the plaintiff, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. In proving pretext, a plaintiff may use evidence introduced to establish the prima facie case. *Hairston,* 9 F.3d at 921.

It is important to note that establishing a prima facie case does not always suffice for a plaintiff to survive a motion for summary judgment. If the defendant comes forward with a legitimate nondiscriminatory reason for the employment decision, the plaintiff must then present some evidence to create an issue of fact as to whether the proffered reason was pretextual and the real reason was discriminatory. It is not sufficient for the plaintiff to merely rely on the possibility that the finder of fact might infer a discriminatory motive. *Palmer v. Dist. Bd. of Trustees of St. Petersburg Junior College,* 748 F.2d 595, 599–600 (11th Cir.1984). In fact, the Eleventh Circuit has held that "to withstand a motion for summary judgment, a plaintiff had to do more than establish a prima facie case and deny the credibility of the defendant's witnesses." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992).

Because it is relatively easy for employees to establish a prima facie case and it is similarly simple for employers to articulate some nondiscriminatory reason for the employment decision, most disparate treatment cases turn on a plaintiff's ability to produce comparative, statistical[19] or direct evidence of discriminatory motive. *See Miles v. M.N.C.Corp.*, 750 F.2d 867, 870–75 (11th Cir.1985). Comparative evidence is that which shows employees who were not members of the protected class were treated differently. *Id.* Direct evidence can be statements or admissions by the employer or its agent. *Id.*

In light of the foregoing authority, the court finds that the contours of Reeves' right under the Equal Protection Clause to be free from impermissible discrimination on the basis of race were clearly established at the time of the events leading to this lawsuit. Consequently, Morrison, Lucas, and Thigpen can only avail themselves of the protection of qualified immunity if Reeves has failed to met her burden to proffer facts which create a genuine issue of fact as to whether these defendants engaged in conduct that violated this clearly established law. The court finds that Reeves has in fact satisfied her burden and that Morrison, Lucas and Thigpen are not entitled to qualified immunity on this claim.

It is undisputed that Reeves, as an African–American, is a member of a protected class. Defendants do not dispute Reeves' qualifications to hold her position as an employee of the Department of Corrections, nor do they dispute the fact that Reeves' employment with the Department was terminated. The disputed issue then is whether other employees who were not members of the protected class engaged in the same kind of conduct in which Reeves engaged, but were not fired for it.

In the present case, the defendants explain Reeves' dismissal by pointing out that she violated a Department of Corrections rule which required her to immediately report any arrest. The Memorandum which Reeves received prior to her pre-termination conference is evidence which, if believed by a trier of fact, would support a conclusion that the employment action was not the product of unlawful discrimination. Reeves refutes this by contending that several white officers were arrested and failed to report their arrests, but that they were not fired for this failure to report their arrests. The only evidence in support of this contention that is properly before the court is the affidavit of Alton Kelly.

According to Kelly's affidavit, he began his employment as a Correctional Officer for the DOC in 1981. Kelly is a white male. In May of 1988, a warrant for the arrest of Kelly for harassing communication was issued. Kelly states that he did not report this arrest or his subsequent criminal court appearance to his supervisor[20] or to Thigpen. From his knowledge of the involvement of the DOC in the criminal prosecution, Kelly concludes that his supervisors, including Thigpen, knew of his arrest and of his failure to report it. Kelly was not disciplined for either his arrest or for his failure to report the arrest. Thus, Kelly engaged in nearly identical behavior to that for which Reeves was terminated, and the defendants did not terminate his employment. *See, Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1186 (11th Cir.1984). This evidence creates a factual issue as to whether the actions of the defendants or a conspiracy between the defendants constituted violations of clearly established equal protection law by intentionally discriminating against Reeves on the basis of her race. Therefore, to the extent that Morrison, Lucas and Thigpen seek summary judgment on the basis of qualified immunity for their actions which allegedly violated Reeves' right to equal protection of the laws, their motion is due to be DENIED.

---

**19.** The court notes that to the extent that Reeves' equal protection claim is a claim that the facially neutral rules and regulations of the Department of Corrections are impermissibly racially discriminatory, Reeves may not claim that the rules and regulations are unconstitutional, without regard to whether it reflects a racially discriminatory purpose, solely because they have a racially disproportionate impact. *See, Washington v. Davis*, 426 U.S. at 239–242, 96 S.Ct. at 2047–49.

**20.** At the time of this arrest, Kelly worked at Draper Correctional Facility.

### 3. Reeves' Official Capacity Claims

Reeves brought suit against Morrison and Herring in their official capacities.[21] The claims against these defendants in their official capacities are really suits against the entity of which the named defendant is an agent. *See, Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1984). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166, 105 S.Ct. at 3105. The real party in interest in such suits is the entity itself, and the entity, not the named defendant, will be liable for any damages. *Id.* Thus, the official capacity suit against Herring is more properly considered a suit against the Alabama Department of Corrections. Similarly, the official capacity suit against Morrison, another Department of Corrections official, is more properly considered a suit against the Department of Corrections.

#### a. Immunity

Qualified immunity and absolute prosecutorial immunity are unavailable to defendants named in their official capacities. *Id.* at 166–67, 105 S.Ct. at 3105–06. "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Id.* at 167, 105 S.Ct. at 3106.

#### *The Eleventh Amendment*

The Eleventh Amendment provides that

[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. The Eleventh Amendment also proscribes suits by citizens against their own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is well established that the states and their agencies are immune from suit for monetary damages. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Additionally, in *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Supreme Court held that actions for injunctive relief against a state or its instrumentalities were not an exception to the Eleventh Amendment bar. In fact, the Supreme Court has explained that the Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See, Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

Although the Eleventh Amendment provides a bar to some kinds of claims under Section 1983, the Eleventh Amendment is not a complete bar. The Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law. *See, Edelman,* 415 U.S. at 664–671, 94 S.Ct. at 1356; *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). In such cases, it is the individual and not the state which is being sued, and when a state official acts unconstitutionally, he is stripped of his official or representative character and Eleventh Amendment protection. *Ex parte Young,* 209 U.S. at 159–160, 28 S.Ct. at 453–54. Moreover, the Eleventh Amendment does not bar monetary relief, including costs, which is ancillary to the prospective injunctive relief. *Kentucky v. Graham,* 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985).

However, in cases where the state official is only a nominal defendant in a suit for damages, and the state is the true defendant because the plaintiff is "seeking to impose a liability which must be paid from

---

**21.** The court notes that Herring is no longer the Commissioner of the Alabama Department of Corrections as he has been replaced by Wilby Wallace, Jr.

public funds in the state treasury," the Eleventh Amendment remains as a bar. *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355–56. This rule applies whether the plaintiff brings an action for damages against a state, a state agency or instrumentality, or a state official. *Id.* Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacity when the state is the real party in interest. *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908.

■ A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981). Clearly, the Department is a state agency, and therefore its officials, the DOC Defendants, are protected by the Eleventh Amendment from suits seeking damages from Alabama's treasury. *Toney v. Alabama*, 784 F.Supp. 1542, 1545 (M.D.Ala. 1992).

To the extent that Reeves seeks to recover damages other than monetary relief ancillary to requested prospective injunctive relief from these defendants in their official capacities, the Eleventh Amendment bars this court from exercising jurisdiction to entertain such claims and summary judgment is due to be GRANTED to the defendants. To the extent that Reeves seeks **prospective injunctive relief** from these defendants, the Eleventh Amendment does not present a jurisdictional bar.

**b. Official Policy or Custom**

■ The Department, through its officials, can be required to provide prospective injunctive relief only if it is liable. It can

only be liable for the acts of its employees which have deprived a plaintiff of federally protected rights if the plaintiff can establish that his injuries were caused by actions taken by the employees pursuant to an official policy or custom of the Department.[22] *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–92, 109 S.Ct. 1197, 1205–07, 103 L.Ed.2d 412 (1989). To hold the governmental entity liable for the alleged constitutional deprivations by its employees, a plaintiff must prove that an official policy or custom of the governmental entity was the moving force behind the deprivations. *Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir.1990). In the instant suit, Reeves contends that the Department had a policy which caused her to suffer a deprivation of her federally protected right to procedural due process and equal protection of the laws. To the extent that Reeves seeks only prospective injunctive relief from the Department, she can proceed to trial with an attempt to prove this claim.[23]

**c. Administrative Regulation 208**

■ In her Response to Corrections Defendants' Motion for Summary Judgment, Reeves claims that a portion of Administrative Regulation 208 as promulgated in August of 1991, pursuant to § 14–1–4, *Code of Alabama*, is unconstitutional because it fails to comport with the requirements of procedural due process. Specifically, Reeves argues that Section III–D, which covers the procedures for dismissal of an employee, fails to provide the requisite procedural due process. For this reason, Reeves asks this court to declare this portion of Regulation 208 unconstitutional.

The court holds that Section III–D of Regulation 208 provides all the constitutionally mandated process necessary to be constitutional. As discussed in greater detail earlier in this opinion, due process requires only notice and an opportunity to respond at the

---

**22.** The court will refer to the Department as though it were the defendant, since that is the effect of seeking this relief from the Herring and Morrison in their official capacities.

**23.** As previously mentioned, the instant Motion for Summary Judgment is limited in its scope. The court need only decide the availability of

Eleventh Amendment immunity to the official capacity defendants, and the court does not pass on whether sufficient evidence of any constitutional violation caused by any official policy or custom exists at this time as it is not properly before the court.

pre-termination stage. The regulation clearly mandates that adequate notice and an opportunity to respond be given an employee before the employee is dismissed. As this court has explained, the requirements for post-termination are more extensive in cases where minimal pre-termination process was provided. This does not mean that only a full evidentiary hearing on any issue the terminated employee wishes to raise will satisfy the post-termination requirements of due process. Clearly, due process requires that adequate formal elements be present in the post-termination context. Thus, the post-termination hearing must provide an impartial decision-maker, an opportunity for the terminated employee and her counsel to confront and cross-examine adverse witnesses, and a chance for the terminated employee to proffer witnesses and evidence on her own behalf. This is all that post-termination due process requires, and this is what Regulation 208 provides. This court being of the opinion that Section III–D of Administrative Regulation 208 is constitutional, the Plaintiff's request that it be declared unconstitutional will be DENIED.

### c. Reeves' Claims under 42 U.S.C. § 1985(3)

The court finds the DOC Defendants' Motion for Summary Judgment is due to be DENIED as it applies to Reeves' claims for relief under 42 U.S.C. § 1985(3). Section 1985(3) provides a cause of action against conspirators who engage in one of several enumerated types of conspiracies to interfere with civil rights and thereby injure a person in his person or in his property or deprive a person of having or exercising any right or privilege of a citizen of the United States. 42 U.S.C. § 1985(3). The elements of a cause of action under Section 1985(3) are

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or his property or deprived of any

right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983); *Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627–28 (11th Cir.1992). The second of these elements requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* For the reasons set out in the portion of this opinion addressing the availability of qualified immunity to Morrison, Lucas, and Thigpen for Reeves' claims under Section 1983 for alleged equal protection violations, the court finds that the defendants are not entitled to the protection of qualified immunity on this claim and so their Motion for Summary Judgment is due to be DENIED.

### V. CONCLUSIONS

For the foregoing reasons, it is hereby ORDERED that

(1) Reeves' Motion to Allowed [sic] Filing of Corrected Response to Correction Defendants' Motion for Summary Judgment is GRANTED.

(2) Reeves' Motion to Supplement Documents Submitted in Opposition to Correction Defendants' Motion for Summary Judgment is DENIED.

(3) Reeves' Motion for to [sic] Allow Filing of Affidavit of Plaintiff is GRANTED.

(4) The Motion to Strike portions of Reeves' affidavit is GRANTED in part and DENIED in part as set out in this opinion.

(5) Defendants Morrison, Lucas, and Thigpen are entitled to the protection of qualified immunity in their individual capacities on Reeves' claims under Section 1983 for alleged violations of the requirements of both substantive and procedural due process, and their Motion for Summary Judgment is GRANTED as it applies to such claims.

(6) Defendants Morrison, Lucas, and Thigpen are not entitled to the protection of qualified immunity in their individual capacities on Reeves' claim under Section 1983 for alleged violations of the Equal Protection

Clause, and their Motion for Summary Judgment is DENIED as it applies to such claims.

(7) Reeves' claims against Morrison and Herring in their official capacities are prohibited by the Eleventh Amendment to the extent that they seek damages, and Motion for Summary Judgment is GRANTED to the extent that it applies to such claims.

(8) Defendants Morrison and Herring have not established that the Eleventh Amendment prohibits Reeves' claims against them in their official capacities seeking prospective injunctive relief, and their Motion for Summary Judgment is DENIED to the extent that it applies to such claims.

(9) Reeves' request that this court declare Administrative Regulation 208 unconstitutional for failure to comply with the requirements of procedural due process is DENIED.

(10) A pre-trial conference is hereby set on March 24, 1995 at 8:30 a.m. A revised proposed pre-trial order shall be filed at that time.

For the sake of clarity, the court notes that the following claims remain for trial:

(1) Reeves' Section 1983 claims against Morrison, Lucas, and Thigpen in their individual capacities for alleged violations of Reeves' rights under the Equal Protection Clause.

(2) Reeves' Section 1983 claims against Morrison and Herring in their official capacities for alleged violations of Reeves' rights to the extent that Reeves seeks only prospective injunctive relief.

(3) Reeves' Section 1985(3) claims against the DOC Defendants.