918 F.2d 145
 54 Fair Empl.Prac.Cas. 737,
55 Empl. Prac. Dec. P 40,401
Juanita NICHOLSON, Plaintiff-Appellee,
v.
GEORGIA DEPARTMENT OF HUMAN RESOURCES, (DHR), James G.
Ledbetter, individually and in official capacity
as Commissioner, Georgia Dept. of Human
Resources, Defendant,
Thomas R. Gaines, individually and in his official capacity
as Director, DHR Division of Rehabilitative Services, Gene
A. Wallace, individually and in his official capacity as
Director of Planning Research and Special Projects, DHR
Division of Rehabilitative Services, Paula McIntoch,
individually and in her official capacity as Director of
Management Support Services, DHR Division of Rehabilitative
Services, Defendants-Appellants,
Jane Shepard, individually and in her official capacity as
Director of Quality Assurance and Human Resources
Development, DHR Division of
Rehabilitation Services, Defendant.
 No. 89-8435.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 27, 1990.
Rehearing Denied Jan. 8, 1991.
 
 George P. Shingler, Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants-appellants.
 Alice D. Bonner, Oakley & Bonner, Atlanta, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before ANDERSON and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 Appellee Juanita Nicholson, an employee of the Georgia Department of Human Resources ("DHR"), initiated this action against, inter alia, defendants Thomas Gaines, Gene Wallace and Paula McIntosh, several of her superiors at DHR. These defendants raised a defense of qualified immunity. The district court's denial of that defense is the subject of this appeal.
 
 
 2
 Until July, 1986, Nicholson, along with two male individuals, worked in the planning unit of the Division of Rehabilitation Services of the DHR. As of July 1, 1986, this unit was abolished and all three members of the unit were reassigned by defendants to other work positions. Although Nicholson made other claims below, this appeal involves only Nicholson's claim that her transfer and treatment constitutes sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C. Sec. 1983.
 
 
 3
 The district court's denial of defendants' motion for summary judgment based on qualified immunity is immediately appealable. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 
 4
 Qualified immunity is an affirmative defense that must be pleaded by the government official being sued in his or her individual capacity. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). In evaluating a defendant's claim to qualified immunity, the following standard is applied: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person should have known." Id. at 818, 102 S.Ct. at 2738.
 
 
 5
 As presently formulated, this standard serves as a shield to all government officials except the plainly incompetent or those who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir.1990). Application of this standard requires the court to conduct its review through the eyes of an objective, reasonable government official: could a reasonable official have believed his or her actions to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred? See Anderson v. Creighton, 483 U.S. 635, 641-42, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); Malley, 475 U.S. at 345, 106 S.Ct. at 1098. Unless it can be said that the state of the law was of such clarity that a reasonable official should have been on notice that his or her challenged conduct was unlawful, that official is entitled to qualified immunity. Clark v. Evans, 840 F.2d 876, 880 (11th Cir.1988). In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. See Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir.1987). Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry. Stewart at 1504. Under this inquiry, the plaintiff need not point to one or more cases that resolved the precise factual issues at issue in his or her case. See, e.g., Waldrop v. Evans, 871 F.2d 1030, 1034-36 (11th Cir.1989); Parker v. Williams, 862 F.2d 1471, 1476-77 (11th Cir.1989). "[A]lthough the standard is fact-specific, it is not one of factual rigidity." Stewart at 1504. Rather, the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant. Anderson, 483 U.S. at 638-40, 107 S.Ct. at 3038-39. If no such case law exists, then the defendant is entitled to qualified immunity.
 
 
 6
 This standard presents two distinct questions of law. First, we must determine whether the legal norms allegedly violated by the defendants were clearly established at the time the defendants acted. Second, if the legal norms that defendants allegedly violated were clearly established, then we must determine whether the plaintiff has adduced evidence sufficient to create a genuine issue of fact as to whether the defendants engaged in conduct violative of the clearly established right. Stewart at 1503.
 
 
 7
 Defendants argue in brief that the only evidence which Nicholson has adduced at the summary judgment stage is that the two male colleagues who were transferred at the same time plaintiff was transferred were offered choices relating to their new positions, while plaintiff was not. Defendants argue that plaintiff has adduced no other evidence from which intentional sex discrimination could be inferred. Thus, defendants argue that Nicholson has failed to adduce proof of a constitutional violation, and that a reasonable government official could have believed that such conduct was lawful.
 
 
 8
 The flaw in defendants' argument is that there was other evidence from which intentional sex discrimination could have been inferred. In addition to the disparate treatment noted in defendants' argument, i.e., that the two male employees were offered options as to their new position while Nicholson was not, there was other evidence. There was evidence from which the factfinder could find that the new job to which Nicholson was transferred was in effect a demotion. She was assigned an office in a small, windowless storage room that had no ventilation, had an average temperature in excess of 84 degrees, and was without a telephone for over a month. Nicholson's new office was generally referred to by employees as the "junk room" or "hot box." It had not served as an office previous to that time, nor was it again used as an office after Nicholson finally obtained a different office. In spite of her complaints concerning the office, Nicholson was unable to secure bona fide office space for over a year. At least two different male employees with less seniority were provided better office space during this period.
 
 
 9
 Nicholson's job responsibilities were substantially diminished after her transfer. Although she was a member of the professional staff, her new job entailed performance of menial tasks, best characterized as clerical work. Until she filed a charge of discrimination, defendants would not even formulate a work plan detailing her duties in her new job position. Additionally, she was the only employee at her grade level to be supervised by an individual who is not a section or unit chief. Both the State Merit System and the DHR Personnel Department considered her new position to be a downgrade. Because of her diminished responsibilities and duties, her ability to obtain training and experience necessary for future promotions was severely restricted, and her entitlement to certain levels of retirement pay has been compromised.
 
 
 10
 In contrast to Nicholson's new job, the two comparable male employees who were transferred at the same time were transferred to new assignments in accordance with their wishes. When Nicholson sought out one of the defendants to discuss transfer to her new job, Nicholson was told that it was "not negotiable." The record reveals no evidence indicating that defendants' treatment of Nicholson was based upon legitimate, non-discriminatory reasons.[1]
 
 
 11
 Based upon all of the evidence in the summary judgment record, we conclude that Nicholson has adduced evidence sufficient to create a genuine issue of fact as to whether defendants treated her differently from male employees solely because of her sex.
 
 
 12
 We also conclude that such conduct would violate clearly established constitutional rights. For a considerable time now, the law has been quite clear that such government action that discriminates on the basis of sex is unconstitutional, unless that conduct is, at minimum, substantially related to the furtherance of an important government interest.[2] See Mississippi University for Women v. Hogan, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); Personnel Administrator v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
 
 
 13
 For the foregoing reasons, the judgment of the district court denying defendants' motion for summary judgment on the basis of qualified immunity is
 
 
 14
 AFFIRMED.
 
 
 15
 EDMONDSON, Circuit Judge, concurs in the result.
 
 
 
 [1]
 Accompanying the defendants' motion for summary judgment was a document entitled "Statement of Material Facts As To Which There Is No Issue To Be Tried." This "Statement" presented the defendants' version of the facts and was premised almost entirely upon various depositions. The depositions have not been made a part of the record on appeal. Without the depositions to substantiate the factual representations contained within this "Statement," this court is unable to rely upon those assertions in reviewing the district court's order. See Gordon v. Watson, 622 F.2d 120, 123 (5th Cir.1980)
 Similarly, the plaintiff, in opposing the defendants' motion for summary judgment, filed a rather lengthy document responding to the each "fact" alleged in the defendants' "Statement." As with the defendants' "Statement," many of these responses contained within the plaintiff's response reference various depositions that have not been included in the record on appeal. Accordingly, this court has not relied upon these unsubstantiated, unsworn statements in this appeal. However, the record on appeal does include substantial evidence supporting the plaintiff's claim. See R1-22 (Exhibits D through Q filed on May 25, 1988, by the plaintiff accompanying her response to the defendants' "Statement"). The basis for our factual discussion is derived almost exclusively from these unrebutted materials.
 Although the defendants did submit other factual evidence in support of their motion for summary judgment, the majority of this evidence went to rebutting the plaintiff's claim that the defendants violated the retaliation prohibitions of Title VII, 42 U.S.C. Sec. 2000e-3(a), and did not address the plaintiff's sex discrimination claim.
 To the extent that the paucity of the record weakens the defendants' claims concerning the applicability of qualified immunity, we note that the defendants, as appellants, bore the responsibility of providing this court with a factual record sufficiently complete to allow a reasoned assessment of their claims. See Crawford v. Western Electric Co., 614 F.2d 1300, 1304 (5th Cir.1980); Green v. Aetna Ins. Co., 397 F.2d 614, 619 (5th Cir.1968).
 
 
 [2]
 Indeed, defendants do not argue on appeal that it would not violate clearly established constitutional norms for defendants to discriminate on the basis of sex. Rather, their argument is that there has been no sex discrimination