902 F.Supp. 1473 (1995)
Norma Jean ROBERTSON, Plaintiff,
v.
ALABAMA DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS, a government agency of the State of Alabama; Robert E. Lunsford, as Director of Alabama Dept. of Economic and Community Affairs; Richard Giordano, individually and as Assistant Division Chief of the Surplus Property Division; Kathleen Woodward, individually, and Gene Anderson, individually, Defendants.
Civ. A. No. 94-D-153-N.
United States District Court, M.D. Alabama, Northern Division.
July 31, 1995.
*1474 *1475 *1476 *1477 Mark W. Sabel, Jr., Montgomery, AL, for plaintiff.
Bruce J. Downey, III, Montgomery, AL, Edward E. Davis, Alabama Department of Econ. Affairs, Montgomery, AL, for defendants.

MEMORANDUM OPINION AND ORDER
DE MENT, District Judge.
This matter is now before the court on the defendants' Alabama Department of Community and Economic Affairs (hereafter "ADECA") et al.s' motion for summary judgment, or in the alternative, for partial summary judgment, filed August 26, 1994. The plaintiff, Norma Jean Robertson (hereafter "Robertson"), responded to the defendants' motion for summary judgment on September 29, 1994. The plaintiff further supplemented her response to the defendants' motion on *1478 February 15, 1995. For the reasons set forth below, the motion is due to be granted in part.

Jurisdiction & Venue
The jurisdiction of this court is invoked pursuant to § 2000e of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; 28 U.S.C. §§ 1331 & 1343(3); and by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.

Factual Background
The plaintiff, Norma Jean Robertson, is a former employee with the Alabama Department of Economic and Community Affairs. At all times pertinent to this action, she held the state merit system title of Accountant III until such time as she elected to take a medical retirement on April 8, 1993.
Robertson alleges in her complaint that the defendants collectively engaged in various forms of discrimination against her. Specifically, she contends that she was subjected to a hostile work environment and various forms of retaliation due to her age, sex, and physical disabilities. According to Robertson, the defendants targeted her for discriminatory treatment after she participated in two separate work-place incidents. First, the plaintiff, along with several other ADECA employees, openly and vocally supported a co-employee's sex discrimination lawsuit against ADECA. Robertson's involvement in this incident included the wearing of buttons, the signing of petitions that were submitted to the governor, and the communication of her opinions on the matter to various ADECA employees during office hours. Secondly, Robertson made several statements wherein she accused the defendants of using federal funds to pay for under funded state projects. Robertson approached the defendants individually and told them that she thought the situation was wrong. In addition, she threatened to voice her concerns to officials with the Department of Housing and Urban Development (hereafter "HUD") if the defendants failed to check into the matter. Robertson was informed by her superiors that her personal interpretations of the laws and policies applicable to federal funding should be discussed with her supervisors first before she took it upon herself to make formal statements to HUD or the press. After Robertson expressed to the defendants her unwillingness to abide by that policy, the defendants sought to limit her communications with HUD officials. Before that time, Robertson's work as an accountant with the Planning and Economic Development Division of ADECA required her to speak occasionally with HUD personnel.
Robertson claims that her involvement in the incidents angered the defendants, and that they set out to retaliate against her and subject her to various forms of discrimination in an effort to make her job so difficult that she would eventually feel compelled to quit. Robertson points to the decision by the individual defendants to transfer her to another Accountant III position within the Department as the most significant act of retaliation and discrimination which precipitated her retirement. On or about August 21, 1992, Gene Anderson notified Robertson that she would be transferred from the Department's Planning and Economic Development Division to the Surplus Property Division Warehouse. The transfer, which took effect on October 3, 1992, did not result in a reduction of salary or merit system rank. However, Robertson did not want the position for several reasons. To begin, the position required a significant amount of retraining, and Robertson contends that such training was intentionally withheld from her by the defendants. In addition, her former position allowed her to supervise several lower level employees, while her position with the Surplus Property Division did not. She further contends that she was not given support personnel to assist her with her work and that therefore, she fell behind in her job. This caused her to a receive a letter of reprimand from Assistant Division Chief Richard Giordano and an unfavorable performance evaluation from him as well.[1] Finally, Robertson claims that the *1479 stress related to her new position, combined with a lack of support from the defendants, caused her to experience severe physical and emotional problems which exacerbated her pre-existing health problems. She charges that the defendants knew she had a history of physical ailments because of the large amount of medical leave time that she had requested in the past and because of a letter that was sent to Kathy Woodward by Robertson's former supervisor, Alice McKinney, which described her health problems.[2] Thus, when she took a substantial amount of time off from work after only a few months in her new position, she quickly exhausted her remaining leave time and was "forced" to retire.
In response, the defendants argue that Robertson's transfer had nothing to do with her age, sex, support for a co-worker's discrimination lawsuit or for the filing of her own EEOC claim. Instead they claim that the transfer was made for legitimate business reasons. In addition, the defendants claim that Robertson did not have a cognizable property interest in her position as the lead accountant for her former division. Robertson retained her same Accountant III position and salary when she was transferred. Defendants Woodward and Giordano contend that they cannot be construed as the plaintiff's "employer" for purposes of this suit. All of the defendants claim that they are shielded from liability based on principles of governmental immunity. Finally, the defendants claim that Robertson failed to notify them of her alleged disability so that they could attempt to evaluate and accommodate her specific needs.
Robertson's complaint asserts the following claims against the defendants:
Count 1: Title VII  Sex Discrimination
Count 2: ADA  Discrimination Based On Employee Disability
Count 3: Title VII  Retaliation
Count 4: ADEA  Age Discrimination
Count 5: Section 1983  Violation of Constitutional Right To Free Speech As Protected By The First Amendment
Count 6: Intentional Infliction Of Emotional Distress
Count 7: Section 1983  Sex Discrimination
Count 8: Section 1985  Conspiracy To Discriminate On The Basis Of Sex

Discussion & Analysis

I. Title VII  Sex Discrimination
Robertson's first claim of sexual harassment under Title VII is premised on the contention that such harassment created a hostile work environment and eventually caused her to be constructively discharged. The court will address each contention separately.

A. Hostile Work Environment
Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). This section prohibits an employer from maintaining a hostile work environment. To prove a prima facie case of hostile work environment, plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior. Henson v. Dundee, 682 F.2d 897, 903-05 (11th Cir.1982).
*1480 As a female, Robertson clearly belongs to a protected class under Title VII. In proving the second element of her prima facie case, that she was subjected to unwelcome sexual harassment, plaintiff must show that she neither "solicit[ed] nor incite[d] it, and ... that [she] regarded the conduct as undesirable or offensive." Id. at 903. Here, the plaintiff has taken great pains to present to the court instances of the defendants' conduct which she found "undesirable or offensive." The court is indeed convinced that there was some measure of tension between her and her supervisors during the weeks and months leading up to her departure. However, the court is equally convinced that none of the conduct that the plaintiff complains of was of a sexual nature. Certainly, the plaintiff has not presented evidence which would indicate that she was subjected to the kind of unwelcome sexual harassment that creates a work environment proscribed by Title VII.
Likewise, plaintiff has failed to establish the third element of her prima facie case. None of the conduct complained of had anything whatsoever to do with her gender. The crux of the plaintiff's case is that she was treated badly by the defendants because she vocally supported a co-worker's discrimination lawsuit against several of the defendants and because she threatened to voice her concerns regarding ADECA's use of certain federal funds directly to HUD.[3] While some of this alleged mistreatment may have been prohibited by Title VII for other reasons discussed infra, it did not create the kind of hostile work environment that Title VII seeks to guard against. In short, the conduct that Robertson complains of was directed at what she said and did. It was wholly unrelated to her status as a female. Title VII does not create a cause of action for unpleasant working conditions caused by something other than a protected status, in this case gender.
To satisfy the fourth element of her prima facie case, plaintiff must show that the harassment was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." Harris v. Forklift Systems, Inc., ___ U.S. ___, ___, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Having found however, that Robertson's treatment was not related to her status as a female, there is no need to inquire into the specifics of her working environment for now. As demonstrated, Robertson has failed to establish the crucial elements of her prima facie case. Moreover, she has failed to provide any evidence more than conclusory allegations listed in her complaint and the pretrial order. Such allegations cannot interpose genuine issues of material fact into the litigation, so as to preclude entry of a summary judgment. See Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) (citations omitted) (holding that "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted").

B. Constructive Discharge
Likewise, Robertson has failed to prove her claim of constructive discharge under Title VII. A plaintiff succeeds in establishing a constructive discharge claim when the complained of discriminatory conduct "was so intolerable that a reasonable person in [her] position would be compelled to resign." Morgan v. Ford, 6 F.3d 750, 755-56 (11th Cir.1993) (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir.1989) (citations omitted)). See also, 42 U.S.C. § 2000e-2(a)(1). Plaintiff has once again failed to raise a material question of fact as to why her employment was intolerable. The defendants conduct may very well have made Robertson's job intolerable, but that conduct was not directed at her because she was a female. Title VII was created to protect persons from intolerable working conditions that exist because of discrimination on the basis of one's race, sex, creed or national origin. St. Mary's Honor Center v. Hicks, ___ U.S. ___, ___, 113 S.Ct. 2742, *1481 2754, 125 L.Ed.2d 407 (1993); see e.g., Lee v. Russell County Bd. of Educ., 684 F.2d 769, 771-72 (11th Cir.1982). Robertson cannot seek redress under a provision of an Act of Congress that is inapplicable to the facts of her case.

II. Title VII  Retaliation
Robertson's second claim under Title VII is that the defendants retaliated against her for engaging in conduct that is statutorily protected.
Title VII protects employees against retaliation by an employer for engaging in statutorily protected activities, such as protesting what is believed to be unlawful discrimination. 42 U.S.C. 2000e-3(a); Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir. 1987). Proof of retaliation is controlled by the framework set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
Accordingly, the plaintiff first must meet her burden of establishing a prima facie case of retaliation. In order to meet this burden, the plaintiff must show "(1) that [s]he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir.1986) (citing Canino v. United States Equal Employment Opportunity Commission, 707 F.2d 468, 471 (11th Cir. 1983)). If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse action. See Burdine supra. Because the rebuttal burden is one of production only, the defendants "need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the [defendants'] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]." Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094.
If the defendants articulate some legitimate, nondiscriminatory reason for the adverse action, then the employee must be given the chance to demonstrate that the defendants' reason is pretextual, i.e., that it is "not the true reason for the employment decision." Id. at 256, 101 S.Ct. at 1095. The employee's burden of demonstrating pretext "merges with [her] ultimate burden of persuading the court that [she] has been the victim of intentional discrimination." Id. at 256, 101 S.Ct. at 1095.
Robertson claims that she engaged in activities that were protected under 42 U.S.C.A. § 2000e-3(a) (1981). Specifically, she contends that her vocal support for co-worker Alice McKinney's Title VII lawsuit, the wearing of buttons in support of McKinney during office hours, the submission of petitions to the Governor's office and the filing of her own EEOC claim, were all protected. The court finds that the statute supports this contention.
In addition, it appears that adverse employment actions were taken against Robertson following these activities. First, Robertson was transferred against her wishes to a division of ADECA that required her to work in a warehouse. Second, Robertson was not given subordinates under her authority as she had in her former division. Lastly, Robertson's work load increased substantially and, when she fell behind, she was given a "meets standards" rating on her performance evaluation report rather than the higher rating she was accustomed to.
For the plaintiff to establish the causal connection between the protected activity and the adverse employment action, the plaintiff must demonstrate that the activity "was a `but for' cause of the adverse employment decision.... If the employee does not bear that burden of persuasion, he or she may not prevail." McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340, 1346 (5th Cir.1985).
While the court believes that the connection between the activities referred to by Robertson and the actions taken by the defendants is not entirely clear, the court nonetheless finds that a legally sufficient causal link does exist. Robertson's transfer *1482 to the Surplus Property Division came on the heels of her protests of discrimination. Although Robertson retained her merit system rank of Accountant III and the commensurate salary, it is clear from the materials submitted that this was a step down. Robertson no longer worked in an office setting, received little help from support personnel, and was given substantially more work in a new and unfamiliar job. Finally, the evidence indicates that Robertson's performance evaluation scores dropped substantially following the referenced activities. Thus, the court finds that the plaintiff has made out a prima facie case of Title VII retaliation.
In an effort to meet their burden of articulating a legitimate non-discriminatory motive for the employment actions taken against Robertson, the defendants contend that she was transferred out of a business necessity. Specifically, the defendants argue that Robertson was transferred as a money saving measure made necessary because of threatened state proration. The move would reduce the financial strain on the Planning and Economic Development Division (hereafter "PED") by transferring her salary to the Surplus Property Division which was allegedly in a better financial position to handle the salary.
Robertson argues however, that the reason proffered by the defendants is a mere pretext for the kind of retaliation proscribed by Title VII. The court agrees.
The materials submitted by Robertson demonstrate that the monies used to pay her salary while at the Surplus Property Division came out of the same fund that supported her salary in her former division. Therefore, her transfer could only save money for the Agency if she was replaced by lower paid employees. The facts presently before the court indicate that such was not the case. Robertson and two other PED accountants were replaced by five employees. The sum of Robertson's and the other two workers' biweekly salaries was $3,080.89. The sum of the five replacement employees' salaries was $4,602.45. Thus, Robertson makes a strong case that the defendants' claim that she was transferred out of fiscal concerns is pretextual.
"The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretextual. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext, and that the action taken was in retaliation for engaging in the protected activity."
Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913 (11th Cir.1993). Accordingly, the court finds that the plaintiff's claim regarding Title VII Retaliation survives summary judgment.

III. Age Discrimination in Employment Act
Next, Robertson claims that she was discriminated against on the basis of her age in violation of the Age Discrimination in Employment Act (hereafter "ADEA"). The ADEA provides, in part: "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. Section 623(a)(1).
In all cases arising under the ADEA, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir.1993); Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir.1988). "If a plaintiff establishes a prima facie case ... the employer must articulate a legitimate, nondiscriminatory rationale for the [adverse employment action]. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual." Young, 840 F.2d at 828.
"There are three methods by which a plaintiff may establish a prima facie case of age discrimination: by direct evidence of discriminatory intent; by meeting the test originally *1483 set out for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or by statistical proof of a pattern of discrimination." Verbraeken v. Westinghouse Electric Corp., 881 F.2d 1041, 1045 (11th Cir.1989).
In this case, Robertson has attempted to meet her initial burden of establishing a prima facie case of age discrimination by using circumstantial evidence in accordance with the test set forth in McDonnell Douglas. Under that test, a prima facie case is established when a plaintiff makes the following showing: (1) that plaintiff was a member of a protected group; (2) that plaintiff was subject to adverse employment action, e.g. transferred; (3) that a person outside the protected group was offered the former position instead; and (4) that plaintiff was qualified for the position. Ramsey v. Chrysler First, Inc., 861 F.2d 1541, 1543 (11th Cir.1988).
Under the first prong of the test, the plaintiff is required to show that she is a member of a protected group. Here, the parties do not dispute that Robertson is a member of a protected group for purposes of the ADEA. The protections of the ADEA clearly extend to those individuals who "are at least 40 years of age but less than 70 years of age." 29 U.S.C. Section 631(a). Robertson's age of 60 satisfies the first element of the prima facie case.
The second prong of the test requires that Robertson demonstrate that she was subjected to adverse employment action. Robertson offers her transfer to the Surplus Property Division as proof of this element. The court finds this to be a sufficient allegation of adverse action.
The third prong of Robertson's prima facie case requires her to prove that applicants outside of the protected group were offered her position in her stead. Here, the PED accountant position was first offered to Mary Watts. Robertson only describes Watts as being younger than she and higher in merit system rank. Watts did not accept the position. Robertson does give a slightly better description of the five employees who took over the accounting duties previously performed by herself and two other accountants. Robertson states that four of the five employees were "under 40 years of age", and all were younger than she. While Robertson has made only a bare bones showing that she was indeed replaced by a younger person, the court nonetheless finds that such a showing satisfies this prong of the test. As to the fourth prong of the McDonnell Douglas test, the parties agree that Robertson was qualified for the position of Accountant III.
As stated above, once a plaintiff has demonstrated a prima facie case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for its decision not to transfer the plaintiff. The burden on the defendant is one of production, not of persuasion. St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). When and if the defendants proffer a legitimate, non-discriminatory reason for their actions, the burden of production then shifts back to the plaintiff to demonstrate that the defendants' proffered reason is pretextual. Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir.1989). "[A] reason cannot be proved to be a `pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." [emphasis in original], Hicks, ___ U.S. at ___, 113 S.Ct. at 2747. The plaintiff's burden goes beyond merely establishing that the reasons offered by the defendants for their decision were not worthy of belief. The plaintiff is required to affirmatively prove by a preponderance of the evidence that discrimination did in fact occur. Id. at ___, 113 S.Ct. at 2751.
In this case, the defendants' proffered reason for transferring Robertson is, again, financial concerns relating to state proration. As stated above, Robertson has proffered some evidence to establish that the stated reason is pretextual. If Robertson's burden of production ended with that showing of pretext, her claim would survive summary judgment. However, Hicks demands that Robertson prove that age discrimination was the real motive behind the transfer. Id. at ___, 113 S.Ct. at 2751. Robertson has failed to meet that demand. The court has *1484 not been directed to a single fact that would indicate that the defendants transferred Robertson or took any other adverse action against her because of her age. As stated above, other factors such as her vocal support of her co-workers claims of discrimination may have motivated the defendants to transfer her, but her age did not. Therefore, the defendants are entitled to summary judgment as to this count.

IV. Americans with Disabilities Act
Robertson also brings a claim under the Americans with Disabilities Act (hereafter "ADA"). She contends that she was discriminated against on the basis of a disability when the defendants transferred her to the Surplus Property Division accounting position. Robertson argues that the defendants were aware that she had a history of respiratory problems, hypertension, and thrombophlebitis, but nevertheless, transferred her to a position that would aggravate all of those problems.[4] The defendants again assert that their actions were taken to transfer the plaintiff's salary to a division that could better handle its cost. The defendants further assert that their actions were wholly unrelated to Robertson's disabilities.
Under the provisions of the ADA, an employer may not discriminate against an otherwise qualified worker because of his or her disability. 42 U.S.C.A. § 12112. Section 12112(a) provides that:
"No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."
Employers must make "reasonable accommodation," § 12112(b)(5)(A), unless the employer makes a showing that the accommodation would impose an "undue hardship." § 12111(10)(A).
Section 12111(10)(A) defines an "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B)." Subparagraph (B) then provides that:
"In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include 
(i) the nature an cost of the accommodation needed under this chapter;
(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity."
A reasonable accommodation would be one that would "enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. Part 1630, App. § 1630.2(o).
Robertson argues that a reasonable accommodation in this case would have been for the defendants to allow her to retain her former position as the PED accountant. Under that position, she claims, she would not have had to endure the additional workload, lack of retraining, and dusty conditions of her work environment, that caused her conditions *1485 to worsen to the point that she was forced to take a medical retirement.
The defendants make no claim that they tried at any point to accommodate Robertson's disabilities other than to allow her to fully exhaust her medical leave time. Instead, they argue that they were forced to transfer her because of the "business necessity" of passing on her salary to another division. This limited response, which has already been shown to be suspect, fails to establish that the defendants acted appropriately under the ADA. Therefore, the court is persuaded that Robertson has created a genuine dispute as to whether the defendants reasonably accommodated her and, if not, whether they could have reasonably accommodated her without undue burden. The defendants' motion with respect to this issue is, therefor, denied.

V. 42 U.S.C. § 1983
Robertson has also asserted constitutional claims against the defendants under 42 U.S.C. § 1983.[5] It is well established that § 1983 itself does not create substantive rights; rather, it is a vehicle through which an individual may seek redress for deprivations of rights established under the Constitution or federal statutes. Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979).

A. Eleventh Amendment Immunity
The Eleventh Amendment bars suits for money damages against a state by the citizens of that state, unless the state has specifically waived its immunity from tort. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The protection afforded under the Eleventh Amendment also extends to actions brought by a state's own citizens in federal court. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Thus, in this case, Eleventh amendment damage immunity extends to ADECA and the named defendants in their official capacities. See Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir.1990).

B. Sexual Discrimination
Robertson's first constitutional claim, succinctly stated, is that her transfer and alleged mistreatment constitutes sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution as enforced by 42 U.S.C. § 1983. The defendants argue that they are entitled to summary judgment as to this claim based on the affirmative defense of qualified immunity. The court agrees.
The affirmative defense of qualified immunity is available to a public official being sued in his or her individual capacity. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736-37, 73 L.Ed.2d 396 (1982). In evaluating a public officials claim to qualified immunity, a court must apply the following standard: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person should have known." Id. at 818, 102 S.Ct. at 2738.
The standard as presently formulated, serves as a shield to all public officials except for those who are plainly incompetent or those who violate the law knowingly. Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
"Application of this standard requires the court to conduct its review through the eyes of an objective, reasonable government official: could a reasonable official have believed his or her actions to be lawful in light of clearly established law an the information possessed by the official at the time the conduct occurred? Unless it can be said that the state of the law was of *1486 such clarity that a reasonable official should have been on notice that his or her challenged conduct was unlawful, that official is entitled to qualified immunity. In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable."
Nicholson v. Georgia Dept. of Human Resources, 918 F.2d 145, 147 (11th Cir.1990) (citations omitted).
The plaintiff has little trouble convincing the court that the law is clear regarding sexual discrimination through government action. "[G]overnment action that discriminates on the basis of sex is unconstitutional, unless that conduct is, at minimum, substantially related to the furtherance of an important government interest." Id. at 148. The defendants do not dispute this summary of the law. Rather, they dispute Robertson's contention that their conduct towards her amounted to discrimination on the basis of sex. The court finds that the materials submitted by the parties bear this out. As stated previously, the defendants' treatment of Robertson, right or wrong, was not based on her status as a female. Entirely different motives prompted the defendants to treat Robertson the way they did; motives which may well entitle her to recovery in the long run. However, the plaintiff's claim under the 14th Amendment as enforced by § 1983 does not afford her relief in this instance. Therefore the defendants' motion for summary judgment on the basis of qualified immunity is granted.

C. Free Speech
Robertson also alleges that her transfer and purported mistreatment violated her First Amendment rights as protected by Section 1983. Again, the defendants' motion for summary judgment is predicated on the doctrine of qualified immunity. The court will forego any further summation of the standards applicable to that affirmative defense other than to reiterate that the plaintiff must convince the court that the defendants conduct violated "a clear, factually-defined, well-recognized right of which a reasonable [agency official] should have known." Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir.1989).
The court's review of applicable First Amendment law demonstrates that, on balance, the defendants knew, or reasonably should have known that Robertson was engaging in constitutionally protected speech.
To survive a motion for summary judgment regarding the free speech claim, Robertson first must show that she engaged in protected free speech, and that the speech was a matter of "public concern." Kurtz v. Vickrey, 855 F.2d 723, 726 (11th Cir.1988). In addition, Robertson must show that her interest in making the comments outweighed the defendants' interest in promoting the effective and efficient fulfillment of ADECA's public responsibilities. Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir.1991). Finally, to survive a motion for summary judgment, the plaintiff, after proving that she engaged in protected speech and that her interests outweigh those of the defendants, the plaintiff must show that the constitutionally protected speech was a substantial motivating factor in any adverse employment action taken against her. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
Robertson alleges that the defendants retaliated against her for vocally supporting a co-worker's sex discrimination lawsuit and for submitting petitions protesting the defendants' allegedly discriminatory conduct to the Governor.[6] Speech is only a matter of public concern if it relates to a "matter of political, social, or other concern to the community." Kurtz v. Vickrey, 855 F.2d 723 (11th Cir.1988) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). An employee's private or personal grievance may not be transformed into a matter of public interest by invoking some supposed communal relevance. *1487 Kurtz, 855 F.2d at 727 (citing Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir.1986)). Here, Robertson can point to the fact that at least a portion of her dispute with the defendants had become a matter of public concern. In the spring of 1992, defendant Gene Anderson, the Director of ADECA at that time, discovered approximately 2.1 million dollars in unaccounted for funds in his department. According to Anderson's interpretation of state law, the funds had to be returned to the state treasury since they were unencumbered at the close of the fiscal year. In a newspaper article dated April 15, 1992, Anderson blamed this oversight on poor accounting procedures. Robertson and several other accountants assumed that Anderson was referring to them, and they defended themselves by speaking to members of the press. Articles were then published that dealt with the feud between Anderson and the accountants. Considering the facts in a light most favorable to the plaintiff, as the court must do at this juncture, and considering the back drop of litigation upon which this case is being tried, the court finds that the plaintiff's speech was a matter of public concern.
Two prongs remain in the determination of whether the plaintiff's First Amendment rights have been violated. The plaintiff must prove that her interest in exercising her right of freedom of speech outweighed the defendants' interest in running an efficient and effective state agency. Also, the plaintiff has a duty to show that the exercise of the freedom of speech was the substantial motivating force behind the transfer and alleged mistreatment. A genuine issue of material fact exists as to whether the defendants' interests in running an effective state agency outweighed those of the plaintiff in informing the public of her concerns. Since there is an issue of fact over whether the defendants in fact retaliated against the plaintiff for the exercise of her First Amendment rights, it is impossible for the court to determine if the defendants' interest in taking action against the plaintiff outweighed those of the plaintiffs in voicing her concerns. Furthermore, the court is unable to determine from the materials before it whether the exercise of free speech was the substantial motivating factor behind the alleged retaliation. Therefore, summary judgment in favor of the defendants is due to be denied as to this count.

VI. 42 U.S.C. § 1985  Conspiracy
Next, Robertson claims that she was discriminated against on the basis of her sex as a result of a conspiracy between the defendants in violation of 42 U.S.C. § 1985(3).
To state a claim for a conspiracy in violation of 42 U.S.C. § 1985(3), the complaint must assert (1) that one or more individuals conspired to deprive another of the protection of the laws or of equal privileges and immunities of the law and (2) that one or more of the alleged conspirators committed an act in furtherance of the object of the conspiracy, whereby another suffered injury or was deprived of exercising any right or privilege of a United States citizen. See Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).
Because the court has already determined that none of the defendants' actions were predicated upon Robertson's gender, the court need not address the conspiracy claim. It is worth mentioning, however, that an additional reason exists for granting summary judgment as to the conspiracy claims.
While the complaint broadly alleges that the defendants conspired to discriminate against Robertson on the basis of her status as a female, the complaint fails to allege any sort of agreement on the part of the alleged conspirators to do so. In Fullman v. Graddick, 739 F.2d 553 (11th Cir.1984), the court held:
In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may be justifiably *1488 dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment ...
Id. at 557 (citations omitted). Based upon the authority of Fullman, the court finds that the plaintiff has not pleaded the conspiracy allegations with sufficient specificity. For the foregoing reasons, the court finds that the defendants' motion for summary judgment as to the plaintiff's § 1985(3) conspiracy claim is due to be granted.

VII. Claim of Outrage
Finally, Robertson brings a claim against the defendants based on the Alabama Tort of Outrage. Robertson argues that the defendants went beyond all possible bounds of decency when they conspired with each other to bring harm to her. Specifically, she contends that the defendants deliberately tried to damage her health by placing her in a work environment that was calculated to cause her harm.
Unfortunately for the plaintiff, the Supreme Court of Alabama has restricted the confines of this tort, allowing for recovery "only in the most egregious circumstances." Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993). To raise a jury issue on a claim for outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Id. at 1043 (citing American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1981)). The Supreme Court of Alabama has stated that "[b]y extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365.
Moreover, after citing more than twenty cases where a tort of outrage claim was not actionable, the court in Thomas outlined three limited circumstances where Alabama courts have allowed this claim to go to the jury:
(1) cases having to do with wrongful conduct in the context of family burials, see Whitt v. Hulsey, 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), Levite Undertakers Co. v. Griggs, 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and Cates v. Taylor, 428 So.2d 637 (Ala.1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, National Security Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala.1983); and 3) a case involving egregious sexual harassment, Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989).
Thomas, 624 So.2d at 1044.
Here, the plaintiff has not provided the court with any evidence to substantiate the allegations in the complaint. Even assuming that the plaintiff had submitted evidence in support of the assertions in the complaint, the facts therein are not so poignant as to "go beyond all possible bounds of decency" and rise to a level of outrage. Inmon, 394 So.2d at 365. Arguably, the plaintiff has demonstrated that the defendants were somewhat indifferent to the plaintiff's health related problems. However, none of the evidence presented to this court indicates that the defendants deliberately tried to harm the plaintiff or worsen her condition as she implies. Accordingly, the court finds that the defendants' motion for summary judgment as to the outrage claim is due to be granted.

Conclusion
In sum, it is CONSIDERED and ORDERED that the Defendants' motion for *1489 summary judgment as to Count I, the plaintiff's claim of sex discrimination under Title VII; Count IV, the plaintiff's claim of age discrimination under the ADEA; Count VI, the plaintiff's pendent state law claim of Outrage; Count VII, the plaintiff's claim of sex discrimination as enforced by § 1983; and, Count VIII, the plaintiff's conspiracy claim under § 1985, is due to be granted. It is further
CONSIDERED and ORDERED that all other claims asserted by Plaintiff REMAIN viable. It is further
CONSIDERED and ORDERED that each party bear its own costs for expenses herein incurred.
NOTES
[1] Robertson's April 7, 1993 evaluation report stated that her performance "meets standards." Robertson asserts that this report was "unfavorable" because it kept her from receiving the two-step salary increase that comes with an evaluation report rating of "consistently meets standards". Robertson contends that she was entitled to the more favorable rating, and that her failure to receive such a rating "damaged [her] emotionally.... to such an extent that [she] was forced to resign." Affidavit: Norma Jean Robertson, p. 8.
[2] Alice McKinney is the co-worker who received support from Robertson when McKinney file her own discrimination lawsuit. The letter to Woodward dated May 6, 1992, was sent in an effort to persuade her not to transfer Robertson to the Surplus Property Division. McKinney's letter asserts that such a transfer would be discriminatory and violative of Robertson's civil rights.
[3] Robertson also contends that she was mistreated by the defendants after she filed her EEOC complaint.
[4] In a memorandum dated May 19, 1992, Alice McKinney informed defendant Woodward that the proposed transfer of Robertson to the Surplus Property Division would seriously aggravate her hypertensive condition and elevated blood pressure level.

The materials submitted also indicate that the defendants were aware that Robertson had requested an unusual amount of sick leave in the past.
[5] Section 1983 imposes liability upon one "who under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983 (West 1982).
[6] Newspaper reports also documented the claims of several accountants, including the plaintiff, that they were being mistreated by ADECA officials. Montgomery Advertiser, April 23, 1992.